UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONNA FLEENOR, | |
| Petitioner, | Case No. 1:15-cv-00595-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,[1] | |
| Respondent. | |

## INTRODUCTION

Currently pending before the Court is Donna Fleenor's Petition for Review[2] of the

Respondent's denial of social security benefits, filed on December 30, 2015. (Dkt. 1.)

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Petitioner actually filed a motion for summary judgment. (Dkt. 18.) However, according to the Court's procedural order, a motion is not required. (Dkt. 6.) The Court therefore construes the motion as a petition for review under the terms of its order.

**MEMORANDUM DECISION AND ORDER - 1**

The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on May 28, 2012. This application was denied initially and on reconsideration, and a hearing was held on February 26, 2014, before Administrative Law Judge (ALJ) Ilene Sloan. A supplemental hearing was held on May 28, 2014. After hearing testimony from Petitioner, an impartial medical expert, and a vocational expert, ALJ Sloan issued a decision on July 24, 2014, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on October 26, 2015.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the May 28, 2014 hearing, Petitioner was forty-five years of age. Petitioner has a high school education. Her prior work experience includes full-time work as a time keeper, invoice control clerk, administrative clerk, and accounting clerk.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ

**MEMORANDUM DECISION AND ORDER - 2**

found Petitioner had not engaged in substantial gainful activity since her alleged onset date of March 8, 2012.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's pain disorder with psychological factors and her general medical condition--status post C5-7 anterior cervical discectomy and fusion--generalized anxiety disorder; and dysthymia severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 1.04A for disorders of the spine, 1.02 for major dysfunction of a joint, and 12.04 and 12.06 for her mental impairments.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. In assessing Petitioner's functional capacity, the ALJ determines whether Petitioner's complaints about the intensity, persistence and limiting effects of her pain are credible.

Here, the ALJ found Petitioner's complaints about the intensity and persistence of her pain not entirely credible. The ALJ reconciled the opinions of state agency physicians Guillermo Rubio, M.D.; Charles Wolfe, M.D.; and Edward Beaty, Ph.D., with Petitioner's treating physicians, Theodore Prier, M.D., and Dave Atteberry, M.D., as well

**MEMORANDUM DECISION AND ORDER - 3**

as Julie Dueis, PA-C, and the impartial medical expert, Ronald Kendrick, M.D. The ALJ gave the state agency physicians' opinions more weight than Petitioner's treating physicians and care providers, for various reasons pertinent to either their treatment history, or inconsistencies with medical records.

After so doing, the ALJ determined Petitioner retained the ability to perform light work, with the exception that she could stand or walk only four hours in an eight-hour workday and sit six hours during an eight-hour workday; occasionally climb ramps and stairs, but not ladders; frequently balance and occasionally stoop, kneel, crouch and never crawl; occasionally reach overhead bilaterally; and frequently handle, finger and feel with her bilateral upper extremities. The ALJ further limited Petitioner, indicating she should avoid moderate exposure to heights, moving machinery, and vibration. The ALJ determined Petitioner could understand, remember, and carry out simple, routine tasks. (AR 21.)

The ALJ found Petitioner did not retain the ability to perform her past relevant work, and therefore proceeded to step five. The burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ found Petitioner retained the ability to perform the requirements of representative occupations such as marker; production line sorter; and table worker. Consequently, the ALJ determined Petitioner was not disabled.

**MEMORANDUM DECISION AND ORDER - 4**

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**MEMORANDUM DECISION AND ORDER - 5**

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner underwent neck surgery on March 8, 2012, which was initiated by neurosurgeon Michael Thomas, D.O. However, Dr. Thomas was unable to complete the

**MEMORANDUM DECISION AND ORDER - 6**

surgery, and thereafter, Dave Atteberry, M.D., was called upon to step in. Prior to arriving in the operating room, the surgical site had been open with the retractor in position for "close to two hours." (AR 343.) Dr. Atteberry then performed an anterior cervical discectomy and fusion, using interbody spacers at C5-6 and C6-7, with fixation by plates and screws. (AR 343.) Petitioner suffered complications after the surgery, specifically complaining of an increase in right arm pain, with burning and paresthesias. (AR 411.)[3] Her voice became weak and raspy. (AR 411.) She also developed Horner syndrome[4] and difficulty swallowing postoperatively. (AR 411.) Petitioner reports she has difficulty with activities of daily living, due to the limited use of her right arm and hand, with associated pain.

Petitioner contends first that the Appeals Council failed to acknowledge receiving additional evidence and incorporating that into its October 26, 2015 order. Next, Petitioner asserts the ALJ erred at step four, because she erroneously rejected the opinions of primary care physician Prier, and treating neurosurgeon Atteberry, in favor of

---

[3] Petitioner initiated a medical malpractice action against Dr. Thomas, which was settled and resolved via mediation prior to the hearing on February 26, 2014. (AR 53-54.) Dr. Thomas's license to practice medicine was suspended. (AR 53-54.)

[4] Horner syndrome is defined as "ipsilateral myosis, ptosis, and facial anhydrosis; usually unilateral and due to an ipsilateral lesion of the cervical sympathetic chain or its central pathway; an ominous sign when it accompanies an ipsilateral traumatic brachial plexopathy because it usually indicates an avulsion of the C8 and T1 primary roots from the spinal cord. "Horner syndrome," STEDMANS MEDICAL DICTIONARY 880950. In layman's terms, Horner syndrome is "a combination of signs and symptoms caused by the disruption of a nerve pathway from the brain to the face and eye on one side of the body. Typically, Horner syndrome results in a decreased pupil size, a drooping eyelid and decreased sweating on the affected side of your face." www.mayoclinic.org.

the state agency reviewing physicians, Rubio, Wolfe, and Beaty. Petitioner contends also that the opinion of Julie Dueis, PA-C, was erroneously rejected. Third, Petitioner asserts the ALJ improperly assessed Petitioner's credibility. And finally, Petitioner contends the ALJ's residual functional capacity determination did not account for all of Petitioner's limitations, which included side effects of prescribed medications. The Court will address each of Petitioner's arguments below.

**1.      Additional Evidence**

Petitioner contends that new evidence submitted to the Appeals Council was not mentioned or acknowledged in the Council's written denial. Petitioner, on October 16, 2014, filed a cover letter as well as additional evidence including two pages of medical records dated September 8, 2014, from Mark Vance, M.D., as well as a letter dated September 18, 2014, from Garry Shohet, D.C., N.M.D., and a letter dated October 1, 2014, from Brian Raymond, L.C.S.W.

The Appeals Council indicated it reviewed the records from Shohet, Raymond, and Vance, but it declined to incorporate the documents into the administrative record because the new information was about a later time period that post-dated the ALJ's decision that covered the period up to July 24, 2014. (AR 2.) Accordingly, the Appeals Council determined the evidence did not affect the decision about whether Petitioner was disabled beginning on or before July 24, 2014. (*Id.*) *See* 20 C.F.R. § 404.970(b) (if "new and material evidence is submitted, the Appeals Council shall consider the additional

**MEMORANDUM DECISION AND ORDER - 8**

evidence only where it relates to the period on or before the date of the administrative law judge hearing decision").

There was no error, as the Appeals Council reviewed and acknowledged receipt of the new evidence, but determined it was not relevant. Petitioner does not challenge the legal sufficiency of the Appeals Council's decision to exclude the evidence from the administrative record.

## 2.      Physician Opinions

Petitioner contends the ALJ erroneously rejected the opinion of Petitioner's treating providers, Drs. Prier and Atteberry, because the ALJ did not properly weigh their opinions against the opinions of the state agency physicians, and erroneously concluded the opinions were not supported by or consistent with other medical evidence.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Also, "clear and convincing" reasons are required to reject the

**MEMORANDUM DECISION AND ORDER - 9**

treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the treating physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

A.      Dr. Prier

At the request of Petitioner's attorney, on January 6, 2014, Dr. Prier was asked to
provide an opinion. The form he was given required him to choose between six different
pre-printed opinions. Dr. Prier checked the box that indicated he did not believe
Petitioner was "capable of performing any type of work on a reasonably continuous,
sustained basis (e.g., eight hours a day, five days a week, or approximately 40 hours per
week consistent with a normal work routine)." (AR 591.) Dr. Prier treated Petitioner from
January 15, 2013, to November 27, 2013. (AR 545 – 590.)[5] The ALJ gave Dr. Prier's
opinion little weight, because he gave no explanation for his opinion and simply checked
a box on a form, and his treatment records indicated little in the way of objective
findings. (AR 24.) Petitioner contends the ALJ's finding was in error.

Here, the ALJ was presented with conflicting medical opinions, and the ALJ was
required to determine credibility and resolve the conflict. *Batson v. Comm'r of Soc.
Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In the case of a conflict, "the ALJ
must give specific, legitimate reasons for disregarding the opinion of the treating
physician." *Id*. Here, the Court finds the ALJ gave specific and legitimate reasons to
discount Dr. Prier's opinion, which consisted of one sentence on a pre-printed check the
box form. An ALJ may discredit treating physicians' opinions that are conclusory, brief,

---

[5] Dr. Prier also treated Petitioner prior to her March 8, 2012 surgery, but those records
predate her alleged onset date of March 8, 2012.

**MEMORANDUM DECISION AND ORDER - 11**

and unsupported by the record as a whole, or by objective medical findings. *Id.* Here, the ALJ found this to be true for Dr. Prier's opinion.

Further, the Court has independently examined the medical records considered by the ALJ, and finds the ALJ's conclusion that Dr. Prier's objective findings do not support his opinion to be correct. For instance, on February 4, 2013, Petitioner sought treatment for her sore mouth. She was prescribed "magic mouthwash liquid." (AR 580.) She again sought treatment for dry mouth on April 8, 2013. (AR 575.) Dr. Prier indicated Petitioner had completed physical therapy, and was complaining of hoarseness. (*Id.*) On May 23, 2013, Petitioner saw Dr. Prier for a four-week follow-up. (AR 569 -74.) Petitioner complained of fatigue, a rash, and depression, for which she was being treated by others. (AR 569.)

Her next visit was June 21, 2013. (AR 566 – 68.) Dr. Prier addressed her complaints of fatigue by decreasing her use of hydrocodone, and Petitioner informed Dr. Prier she was seeking an appointment with a pain clinic in Seattle. By July 23, 2013, Dr. Prier noted Petitioner was less drowsy on the new medication regimen. (AR 563.) The last medical record addressing Petitioner's cervical radiculopathy is dated October 17, 2013. (AR 559 – 562.) Dr. Prier's notes simply indicate that Petitioner's pain was not well controlled, but that Dr. Atteberry was following that. There is nothing in the medical records that is consistent with the extreme, unexplained limitations Dr. Prier endorsed on the check the box form.

**MEMORANDUM DECISION AND ORDER - 12**

Other medical evidence from independent sources contradicted Dr. Prier's opinion. For instance, medical expert Ronald Kendrick was of the opinion Petitioner could tolerate sedentary work, and tolerate light work with restrictions. (AR 41-42.) The ALJ gave some weight to Dr. Kendrick's opinions, finding them equivocal because Dr. Kendrick initially indicated the level of pain Petitioner experienced was reasonable for a person with her condition. (AR 24.)

The ALJ discussed also Petitioner's initial evaluation with Lee Roberston, D.O., in June of 2013. (AR 24, 596 – 98.) Dr. Robertson performed manual muscle testing, which revealed full strength in Petitioner's upper extremities. (AR 24, 597.) In Dr. Robertson's opinion, Petitioner's functional status was less than sedentary, but that she could improve to "at least a sedentary to light level in the future." (AR 598.) The ALJ gave Dr. Robertson's opinion significant weight, because later medical records showed improvement consistent with Dr. Robertson's opinion. (AR 24.)

Based upon these contradictory findings, the ALJ appropriately declined to rely upon Dr. Prier's opinion, and did not commit error in giving it minimal evidentiary weight.

### B.   Dr. Atteberry

Dr. Atteberry was given the same check the box form as completed by Dr. Prier. He, too, checked the box that indicated his opinion was Petitioner could not perform any type of work. (AR 645.) Again, the ALJ rejected Dr. Atteberry's opinion because it was

simply a check the box form with no explanation as to how the doctor arrived at his opinion.

Dr. Atteberry was the treating surgeon. (AR 341 - 343.) There are no additional records, other than a telephone consultation between Cloie Johnson, a rehabilitation counselor, and Dr. Atteberry, which occurred on or about November 18, 2013, and a follow up consultation note. (AR 615 – 616; 617 - 618.) Again, there is nothing in the record explaining Dr. Atteberry's opinion that, without further surgery or implantation of a spinal cord stimulator, Petitioner would not be able to return to work. (AR 615.) Dr. Atteberry's follow up record, dated October 23, 2013, specifically noted the absence of objective medical evidence as an explanation for Petitioner's chronic pain syndrome, and suggested referral to a specialist for further evaluation. (AR 617.) Although Dr. Atteberry was of the opinion that Petitioner could be suffering from nerve root irritation, (AR 617,) there is no explanation in the record accounting for why Petitioner's symptoms support Dr. Atteberry's conclusory, check the box opinion that Petitioner would be unable to work.

As with the above analysis of Dr. Prier's opinion, the ALJ appropriately declined to rely upon Dr. Atteberry's opinion and did not commit error in giving it minimal weight in light of the conflicting medical evidence in the record.

## C.     Reviewing Physicians – Rubio, Wolfe, and Beaty

The ALJ gave all three state agency opinions great weight, because they reviewed the entire record and explained the bases for their opinions, and their opinions were

consistent with the medical records and Petitioner's reported activities. (AR 23 – 24.) Petitioner argues the reviewing physicians rendered their opinions prior to receiving all of the medical records, and that their opinions should not be given weight because they did not examine Petitioner.

Here, however, the ALJ had the benefit of numerous other opinions in the record, and did not rely upon the nonexamining physicians' reports alone to reject the opinions of Petitioner's treating physicians. As explained above, the ALJ gave specific, legitimate reasons for rejecting the treating physicians' opinions regarding the ultimate issue of disability. The ALJ then explained why, citing to numerous instances in the record that were inconsistent with such extreme opinions. Those same reasons provide a basis for affording the nonexamining physicians' opinions greater weight.

With regard to Petitioner's argument that the examining physicians did not review the entirety of the record, the evidence reflects Dr. Rubio rendered his opinion on August 23, 2012, regarding Petitioner's functional limitations (AR 93); Dr. Beaty rendered his opinion regarding Petitioner's mental impairments on January 14, 2013; (AR 103); and Dr. Wolfe rendered his opinion concerning Petitioner's functional limitations on January 17, 2013 (AR 106).

Petitioner did not explain how records later than January 17, 2013, discredit the examining physicians' opinions. A review of the record indicates Petitioner was suffering from urologic deficiencies in April of 2013, which are unrelated to her pain complaints stemming from her neck surgery. (AR 494.) Records from Dr. Rick Gross, an ear, nose,

and throat specialist, dated April 15, 2013, indicated Petitioner's voice had significantly improved. (AR 536.) Again, these complaints are unrelated to Petitioner's pain complaints. The Court already has discussed the complaints appearing in Dr. Prier's records after January 17, 2013, above. And, the ALJ discussed the opinion of Dr. Robertson, D.O., who performed an independent examination on June 28, 2013. (AR 24.)

Based upon the above, the ALJ appropriately resolved the conflicting evidence in the medical records, and the Court finds no error with regard to her evaluation of the state agency reviewing physicians' opinions.

### 3.    Julie Dueis, PA-C

The ALJ noted that Julie Dueis, a physician assistant, rendered an opinion in May of 2012 that Petitioner was unable to return to work due to weakness in her hand and associated pain. (AR 23.) It appears, however, that the opinion was rendered by Petitioner's physical therapist, Michael Kane, upon referral by Julie Dueis on May 25, 2012, and not by Dueis herself. (AR 435 – 439.)

Regardless who gave the opinion (Dueis or Kane), both qualify as an "other source." 20 C.F.R. § 404.1513(d)(1). Other sources are qualified to provide evidence about "the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Garrison v. Colvin*, 759 F.3d 995, 1013–14 (9th Cir. 2014). As lay witnesses, other source statements may not be disregarded without comment. The ALJ may discount testimony from these other sources if the ALJ "'gives reasons germane to

each witness for doing so.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)

(quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

Petitioner argues the ALJ erred by concluding Dueis's opinion was entitled to little

weight on the grounds that she was not an acceptable medical source. However, the ALJ,

while appropriately noting Dueis was an "other source," chose to give the opinion little

weight because it was given only two months after Petitioner's surgery, and was therefore

not reflective of Petitioner's functioning during the entire time period at issue. (AR 23.)

The Court finds the ALJ provided a specific and legitimate reason germane to the

witness for discounting the opinion of Julie Dueis, PA-C.

## 4.    Credibility

argues the ALJ did not properly support her credibility findings regarding

Petitioner's allegations of disabling symptoms. Petitioner argues the ALJ selectively

cherry-picked portions of the record, and left out important context, regarding

Petitioner's daily activities, and that there was no evidence of malingering. For example,

Petitioner argues that the ALJ's example of Petitioner's ability to complete housework

omitted important details, such as the fact it took her longer, she often needed assistance,

or she was in pain the following day if she undertook too much. (Pl. Mot. at 15, Dkt. 18.)

To find Petitioner's testimony regarding the severity of her pain symptoms

unreliable, the ALJ was required to make "a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.

2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ

conducts a two-step analysis to assess subjective testimony where, under step one, the

claimant "must produce objective medical evidence of an underlying impairment" or

impairments that could reasonably be expected to produce some degree of pain. *Id.*

(quoting *Smolen*, 80 F.3d at 1281–82). If the claimant meets this threshold and there is no

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons for

doing so." *Id.*

      The ALJ may consider many factors in weighing a claimant's credibility, including

"(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for

lying, prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid; (2) unexplained or inadequately explained failure

to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's

daily activities." *Id*. If the ALJ's finding is supported by substantial evidence, the court

"may not engage in second-guessing." *Id.* (quoting *Thomas*, 278 F.3d at 959).

      The ALJ found Petitioner's statements about the intensity, persistence, and

limiting effects of her pain symptoms were not entirely credible for two reasons. First, the

ALJ discussed the objective medical evidence, which indicated Petitioner's pain

complaints improved with physical therapy and pain medication. (AR 22.) Second, the

ALJ discussed Petitioner's daily activities, finding that she was able to do housework, use

the computer, grocery shop, take vacations with her husband, and babysit her grandson. (AR 22-23.)

The ALJ considered and discussed the objective medical evidence of record, and found that it did not support Petitioner's allegations of a disabling level of physical functioning and pain. (AR 22.) An ALJ may draw an adverse credibility finding when a claimant's allegations "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Security Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ cited to a nerve conduction study from April of 2013, showing no electrodiagnostic evidence of carpal tunnel syndrome, cervical radiculopathy, or ulnar neuropathy. (AR 595.)

In addition, treatment notes from July of 2013 indicated Petitioner had improved pain control on new medication with less drowsiness. (AR 564.) And, Dr. Lee Robertson's evaluation in June of 2013 indicated Petitioner had full strength in her upper extremities. These records, in addition to the medical opinion evidence discussed by the ALJ, provide substantial evidence supporting the ALJ's conclusion. Petitioner did not contest this aspect of the ALJ's credibility finding in her brief. Accordingly, there is substantial evidence to support the ALJ's credibility finding based upon the objective medical evidence in the record and the medical opinion evidence.

Additionally, the ALJ noted the extent of Petitioner's daily activities. The Court concludes, after a review of the record, the ALJ's findings that Petitioner's activities indicate an ability to work are supported by the evidence. The ALJ found Petitioner was

**MEMORANDUM DECISION AND ORDER - 19**

able to perform various household chores, such as cooking, laundry, washing dishes, and shopping. Although Petitioner testified she required assistance, or could be in pain after too much exertion, it is for the ALJ to resolve the testimony in the record. If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). It was reasonable, given the record, for the ALJ to determine Petitioner's daily activities were limited to the extent one would expect given Petitioner's complaints of disabling pain symptoms.

Next, Petitioner contends the ALJ's mischaracterization of Petitioner as having opioid and marijuana dependence was used erroneously as support for the ALJ's credibility determination. While it is true the ALJ noted, at step two, that Petitioner's severe impairments included opioid dependence, sedative dependence, cognitive disorder related to medication overuse, depressive disorder likely related to medication overuse, and marijuana dependence, (AR 18), there is no support in the record for Petitioner's argument that the ALJ considered these issues as part of her credibility determination. The ALJ discussed the psychological evaluation conducted by Dr. James Moore, Ph.D., which occurred in June of 2013. (AR 24). Dr. Moore was of the opinion Petitioner was taking too much pain medication, and that after detoxification and a physical rehabilitation program, Petitioner would regain flexibility and strength, as well as be able to return to a "normal and productive lifestyle." (AR 24.) The ALJ did not entirely credit

**MEMORANDUM DECISION AND ORDER - 20**

this opinion, and only gave it "some weight," not "significant weight," as was mischaracterized by Petitioner in her brief. (Dkt. 18 at 16.)

Last, Petitioner argues the ALJ failed to properly account for the side-effects of Plaintiff's narcotics medications, specifically that they made her drowsy. However, the ALJ specifically noted Petitioner was observed by her primary care physicians to be alert, oriented, in no acute distress, and with good attention. (AR 22.) Further, the ALJ cited to the two instances in the record where Dr. Prier addressed Petitioner's complaints of drowsiness by decreasing her use of hydrocodone, and by the next visit, Petitioner reported less drowsiness. (AR 563, AR 22, citing Ex. 16F.)

The Court therefore finds the ALJ's credibility determination was supported by substantial evidence in the record, and that the ALJ gave specific and legitimate reasons for discounting Petitioner's testimony about the intensity and limiting effects of her pain.

## 5.    Residual Functional Capacity

Last, Petitioner argues the ALJ's RFC determination is not supported by substantial evidence in the record. A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.* To properly ascertain a claimant's RFC, an ALJ must therefore assess Petitioner's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20

**MEMORANDUM DECISION AND ORDER - 21**

C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). These include mental limitations such as the effects of depression, fatigue, pain, tenderness, numbness and muscle spasms.

Because of the Court's findings above, Petitioner's argument that the ALJ erred because he did not consider the impact of all of Petitioner's physical impairments when formulating Petitioner's RFC is without support in the record. Essentially, Petitioner argues that, had the ALJ credited her treating physicians' opinions as well as assessed Petitioner's credibility differently, the RFC assessment would have resulted in a finding of disability. Instead, the ALJ credited the state agency medical consultants' opinions as well as Dr. Robertson's pain management evaluation, finding those opinions consistent with the objective medical evidence and assessments in the record, and consistent also with the ALJ's evaluation of Petitioner's credibility about the limiting effects of her pain. (AR 22 - 24.)

The Court finds the ALJ did not err in his analysis of the various physicians' opinions or with respect to her analysis of Petitioner's credibility; therefore, the RFC finding also is free from legal error.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is

not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the

petition for review is **DISMISSED**.

DATED: March 17, 2017

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**